```
           IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL WHITE                    :        CIVIL ACTION
                                 :
         v.                      :
                                 :
CITY OF PHILADELPHIA, et al.     :        NO. 23-4538
```

MEMORANDUM

Bartle, J.                                        March 11, 2024

Plaintiff Michael White was released from custody after his state convictions for second degree murder, robbery, and conspiracy were vacated on December 29, 2022 by this court as a result of plaintiff's motion under 28 U.S.C. § 2254. White v. Vaughn, Civ. A. No. 94-6598, 2022 WL 17993129 (E.D. Pa. Dec. 29, 2022) (Doc. # 94). White has now sued under 42 U.S.C. § 1983 the City of Philadelphia, the estate of Lawrence Gerrard, the estate of Francis Miller, the estate of William Shelton, and former Philadelphia Assistant District Attorney Frank DeSimone, who prosecuted him.[1]  Before this court is the motion of DeSimone to dismiss this action as to him under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground of absolute immunity.

---

1. White avers that DeSimone deprived him of due process and a fair trial by deliberately deceiving the court through suppression of evidence (Count I), engaged in a civil rights conspiracy by suppressing his medical records and the criminal histories of the Commonwealth's witness and the victim of the homicide (Count III), and failed to intervene on White's behalf to prevent his wrongful conviction (Count IV).

I

The court, at this stage, accepts as true the disturbing account of events recited in the complaint. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The court may also consider undisputed facts outside the complaint including "matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)).

In early January 1977, White accompanied an individual named Eughinia Jones to Taylor's Variety Store at 20th and Jefferson Streets in North Philadelphia. Jones sought to collect a debt owed to him by Georgell "Yock" Lewis, one of the owners of the store. Jones also owed White money, and White wanted to ensure that Jones paid him after Lewis repaid Jones. Unbeknownst to White, Jones was carrying a firearm. While at the store, Jones shot and killed Lewis after an argument. Carmella Sprowal, a store employee, was on the premises at the time. Both Jones and White were arrested later that day.

During his interrogation, White was severely beaten by detectives Gerrard and Miller and was forced to sign a confession. White was then transferred to the Philadelphia County Prison where he received needed immediate medical

attention.  Defense counsel's later request for the medical records was to no avail.  The records could never be located.

White's defense counsel before trial also requested that DeSimone produce the prior criminal records of Sprowal, the key prosecution witness at White's trial, and of Lewis, the victim of the homicide.  Defense counsel further sought information about drug activity at Taylor's Variety Store.  In response, DeSimone lied that he had no such information and that Sprowal was not a defendant in another case.  It also turned out that Lewis, the victim, had at least five arrests for possession and sale of drugs, two of which arrests had occurred at the variety store.  During one of these arrests, he was found with 178 packets of heroin.

This information was relevant to White's defense that Jones killed Lewis over a dispute involving drugs.  At the trial Sprowal testified that neither she nor anyone else sold drugs at the store. Sprowal later filed an affidavit that DeSimone told her not to mention anything about drugs while testifying at White's trial.  White was convicted of second degree murder, robbery, and conspiracy in the Court of Common Pleas of Philadelphia County and sentenced to life imprisonment.

Some seventeen years later, Judge Armand Della Porta, who had presided over White's trial, granted him a new trial after an evidentiary hearing in which Judge Della Porta found

-3-

that DeSimone had failed to produce the requested exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963). The Superior Court, however, reversed Judge Della Porta's order not on the merits but on the ground that White had waived his claim concerning the nondisclosure of Lewis's arrest record for failure to raise the issue on direct appeal. This decision did not disturb Judge Della Porta's factual finding that DeSimone had mispresented and failed to disclose Lewis's arrest record.

The matter did not rest there. In December 2022, my colleague Judge John R. Padova granted White relief under 28 U.S.C. § 2254. In a prior order scheduling an evidentiary hearing, Judge Padova found that although White had procedurally defaulted on the claim that DeSimone failed to produce the requested Brady material, the Third Circuit's decisions in Dennis v. Secretary, Pennsylvania Department of Corrections, 834 F.3d 263 (3d Cir. 2016) (en banc), and Bracey v. Superintendent Rockview SCI, 986 F.3d 274 (2021), constituted a relevant change in material law. White v. Vaughn, Civ. A No. 94-6598, 2022 WL 4080760, at *6 (E.D. Pa. Sept. 6, 2022) (Doc. # 77). These decisions established that the duty to provide Brady material rests on the prosecution and White did not have a duty to "ferret out" such material himself. Id. Consequently, White was still eligible for habeas relief provided he showed cause

-4-

and prejudice for his failure to raise his Brady claim on direct appeal.

Judge Padova found that such cause and prejudice existed to excuse White's default.  He found that prejudice existed based on Judge Della Porta's factual finding that the prosecution's failure to disclose Lewis's arrest record had denied White a fair trial.  White, 2022 WL 17993129, at *5.  Judge Della Porta had found that the lack of any arrest records for Lewis not only required White's counsel to abandon the defense that the shooting occurred over a drug dispute unrelated to White but also denied White the opportunity to adequately cross-examine Sprowal.  Id.  Judge Padova ordered the Commonwealth to retry him within 180 days or release him from custody.  Id.  To avoid a trial, White pleaded guilty to third degree murder and was sentenced to time served.  This lawsuit followed.

II

As noted above, DeSimone argues that the action must be dismissed as to him on the ground that, as a prosecutor, he is absolutely immune from suit under the facts alleged here.  The seminal and controlling precedent on this issue is the Supreme Court's decision in Imbler v. Pachtman, 424 U.S. 409 (1976).  There, plaintiff Paul Imbler had been indicted and convicted of felony murder in a California state court.  Id. at

411-12.  He was sentenced to death.  <u>Id.</u>  In a federal habeas corpus proceeding, the district court found that the prosecutor had made "culpable use . . . of misleading or false testimony" and had suppressed material evidence favorable to Imbler.  <u>Id.</u> at 414-15.  Imbler was released from custody.

Thereafter, Imbler sued the prosecutor for damages under 42 U.S.C. § 1983.  The Supreme Court held that the prosecutor was immune from liability as a prosecutor enjoys absolute immunity "when he acts within the scope of his prosecutorial duties."  <u>Id.</u> at 420, 430.

The Supreme Court explained:

> The prosecutor's possible knowledge of a witness' falsehoods, <u>the materiality of evidence not revealed to the defense</u>, the propriety of a closing argument, and ultimately in every case the likelihood that prosecutorial misconduct so infected a trial as to deny due process, are typical of issues with which judges struggle in actions for post-trial relief, sometimes to differing conclusions. . . . Defending these decisions, often years after they were made, could impose unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials.

<u>Id.</u> at 425-26 (emphasis added).

The Supreme Court recognized while the "genuinely wronged defendant" is left without a civil remedy, professional discipline as well as criminal sanctions are available against a miscreant prosecutor.  <u>Id.</u> at 427.  It concluded that in the

context of a civil suit, it is "better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." Id. at 428 (quoting Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949)).

The Court cautioned that it was not granting absolute immunity for all acts of a prosecutor. A prosecutor is protected when he or she undertakes actions within the prosecutorial function, sometimes called the quasi-judicial function. The prosecutor is not immunized from a civil suit when he or she acts in an administrative or investigative capacity. As subsequent cases demonstrate, it is not always easy to discern where those lines are to be drawn. See, e.g., Van de Kamp v. Goldstein, 555 U.S. 335, 343-48 (2009); Schneyder v. Smith, 653 F.3d 313, 331-32 (3d Cir. 2011).

Here, DeSimone suppressed material evidence about the drug activity of Sprowal and Lewis and at Taylor's Variety Store where Jones killed Lewis. He dissembled to the defense attorney that such evidence did not exist and told Sprowal, the key Commonwealth witness, to say nothing about drug activity. This all occurred in the context of trying White for murder. DeSimone clearly violated Brady.

The wrongdoing of DeSimone alleged here and confirmed in the findings of Judge Della Porta and Judge Padova fits

context of a civil suit, it is "better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." Id. at 428 (quoting Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949)).

The Court cautioned that it was not granting absolute immunity for all acts of a prosecutor. A prosecutor is protected when he or she undertakes actions within the prosecutorial function, sometimes called the quasi-judicial function. The prosecutor is not immunized from a civil suit when he or she acts in an administrative or investigative capacity. As subsequent cases demonstrate, it is not always easy to discern where those lines are to be drawn. See, e.g., Van de Kamp v. Goldstein, 555 U.S. 335, 343-48 (2009); Schneyder v. Smith, 653 F.3d 313, 331-32 (3d Cir. 2011).

Here, DeSimone suppressed material evidence about the drug activity of Sprowal and Lewis and at Taylor's Variety Store where Jones killed Lewis. He dissembled to the defense attorney that such evidence did not exist and told Sprowal, the key Commonwealth witness, to say nothing about drug activity. This all occurred in the context of trying White for murder. DeSimone clearly violated Brady.

The wrongdoing of DeSimone alleged here and confirmed in the findings of Judge Della Porta and Judge Padova fits

squarely within the facts and reasoning of Imbler, where the Supreme Court held that the prosecutor was functioning within his prosecutorial capacity and was therefore entitled to absolute immunity.  In Imbler, the prosecutor suppressed material evidence at the trial favorable to Imbler.  Here DeSimone suppressed material evidence at the trial favorable to White.

       Accordingly, the motion of DeSimone to dismiss this action on the basis of absolute immunity will be granted.