IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL WHITE                      :          CIVIL ACTION
                                   :
            v.                     :
                                   :
CITY OF PHILADELPHIA, et al.       :          NO. 23-4538

MEMORANDUM

Bartle, J.                                    April 8, 2024

          The convictions and life sentence of plaintiff Michael
White for second degree murder, robbery, and conspiracy were
vacated on December 29, 2022 by my colleague Judge John R.
Padova pursuant to 28 U.S.C. § 2254.  White v. Vaughn, Civ. A.
No. 94-6598, 2022 WL 17993129 (E.D. Pa. Dec. 29, 2022) (Doc.
# 94).  Judge Padova ordered the Commonwealth to release White
from custody or retry him within 180 days.  The Commonwealth
opted to retry White.  He thereupon pleaded guilty to third
degree murder, robbery, and conspiracy, was sentenced to time
served, and was released from custody after over forty-six years
in prison.

          White has now sued the City of Philadelphia, the
estate of Detective Lawrence Gerrard, the estate of Detective
Francis Miller, and the estate of police Lieutenant William
Shelton under 42 U.S.C. § 1983.[1]  White claims that the

_____

1.   Former Assistant District Attorney Frank DeSimone was also
sued.  On March 11, 2023, the court has granted his motion to
dismiss on the ground of absolute immunity.  White v. City of

individual defendants violated his constitutional rights during the investigation and prosecution of him for murder.  White alleges that the City is liable under <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658 (1978), because of certain of its customs that cause constitutional injury.

Before this court is the motion of the City of Philadelphia to dismiss this action as to it, that is Count VI of the complaint, under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

I

According to the complaint, in early January 1977, White accompanied Eughinia Jones to Taylor's Variety Store at 20th and Jefferson Streets in North Philadelphia.  Jones sought to collect a debt owed to him by Georgell "Yock" Lewis, one of the owners of the store.  Jones also owed White money, and White wanted to ensure that Jones paid him after Lewis repaid Jones. Unbeknownst to White, Jones was carrying a firearm.  While at the store, Jones shot and killed Lewis after an argument. Carmella Sprowal, a store employee, was the only other person on the premises at the time.  Both Jones and White were arrested later that day.

---

<u>Philadelphia</u>, Civ. A. No. 23-4538, 2024 WL 1052898 (E.D. Pa. Mar. 11, 2024) (Doc. # 18).

White was severely beaten by Detectives Gerrard and Miller while being interrogated about the shooting of Lewis. The detectives forced White to sign a confession that the detectives fabricated.  White avers that these actions were part of a custom of the City whereby police officers would physically or psychologically abuse suspects to coerce them into confessing crimes that they did not commit.  He cites a "landmark investigation" published by the Philadelphia Inquirer on April 24, 1977, which reported that the custom of coercing confessions was widespread among Philadelphia homicide detectives.

After White signed his coerced confession, he was transferred to the Philadelphia County Prison where he immediately received needed medical attention.  Defense counsel subpoenaed White's medical records, but it was to no avail. While the records were apparently gathered, they later went missing and were never produced.  As a result, defense counsel was not able to make use of White's medical records in support of the motion to suppress his confession.  The motion to suppress evidence was thereafter denied.

Before trial, White's defense counsel also requested the Commonwealth produce the criminal records of Sprowal, the key prosecution witness at White's trial, and of Lewis, the homicide victim.  Defense counsel further sought information about drug activity at Taylor's Variety Store.  It was the

-3-

defense's theory of events that Lewis was killed by Jones in a drug dispute that went awry.  Frank DeSimone, the Assistant District Attorney prosecuting White's case, told White's defense counsel that no such evidence existed.  It turned out, however, that Lewis had at least five arrests for the possession and sale of drugs.  Two of these arrests had occurred at the variety store.  In one of these arrests, he was found with 178 packets of heroin.  Taylor's Variety Store was well known to the Philadelphia Police Department as a front for heroin sales.  At the trial, Sprowal testified falsely that neither she nor anyone else sold drugs at the store.  Years later, Sprowal filed an affidavit that she was told by Assistant District Attorney DeSimone not to mention anything about drugs while testifying at White's trial.  White avers that the suppression by the City and DeSimone of information favorable to him was part of a custom of withholding exculpatory evidence.

White further alleges that the City failed to adequately train and supervise the homicide detectives in the Philadelphia Police Department and the attorneys in the Philadelphia District Attorney's Office.  He points to his own experience, admissions by former homicide detectives and policymakers, and the lack of an effective internal disciplinary mechanism developed by the Internal Affairs Division.  He avers

that these failures constituted deliberate indifference on the part of the City.

White pleads that as a result of these constitutional violations by the City he was convicted of second degree murder, robbery, and conspiracy in the Court of Common Pleas of Philadelphia County and sentenced to life imprisonment.

II

The City first moves to dismiss in part White's claim of municipal liability under Monell to the extent that White's allegations do not meet the plausibility pleading standard under Twombly and Iqbal.

The complaint must plead more than "labels and conclusions."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  It must contain more than "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555) (internal quotations and alterations omitted).  Instead, it must contain sufficient factual content to state a claim that is plausible on its face.  Id.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679.

-5-

        The City argues that the alleged custom of withholding
medical records and other exculpatory evidence, as well as
White's two claims that the City's failure to train and
supervise its homicide detectives and the attorneys in the
District Attorney's Office all fail the plausibility test.
Defendant concedes plausibility as to allegations of a custom of
coercing confessions.

        The complaint here provides sufficient details to show
plausibility.  It alleges specific customs.  It references a
Philadelphia Inquirer investigation report describing a long
history of abuse by the Philadelphia Police Department and its
homicide detectives, including the obtaining of coerced
confessions.  The complaint also repeats in detail other alleged
long-term unconstitutional practices and cites three occasions
in the 1980s during which this court has entered consent orders
enjoining the Philadelphia Police Department from ongoing
unlawful arrest and detention practices.  It further identifies
twenty other defendants who were exonerated.  According to the
complaint, such exonerations "demonstrate the pervasive
patterns, practices and customs of official misconduct within
the Homicide Unit" of the Philadelphia Police Department.

        Such allegations are "above the speculative level" and
do more than "create[] a suspicion [of] a legally cognizable
right of action."  Twombly, 550 U.S at 555 (quoting 5C Charles

-6-

Allen Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u>
§ 1216 (3d ed. 2004)).  The court cannot ignore common sense.
<u>Iqbal</u>, 556 U.S at 679.  The court finds that the complaint meets
the plausibility test of <u>Twombly</u> and <u>Iqbal</u>.  The motion of the
City to dismiss the complaint in part as to it for lack of
plausibility will be denied.

III

        The City also moves to dismiss White's claims on the
ground that even if plausibly stated they should be dismissed
for failure to state a claim upon which relief can be granted
under Rule 12(b)(6).  At this stage, the court accepts as true
the disturbing account of events recited in the complaint.
<u>Twombly</u>, 550 U.S. at 555.  The Court may also consider "exhibits
attached to the complaint and matters of public record."
<u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998
F.2d 1192, 1196 (3d Cir. 1993).  When there is a document
"integral to or explicitly relied upon in the complaint," it may
also be considered as there is no concern of lack of notice to
the plaintiff.  <u>See</u> <u>Schmidt v. Skolas</u>, 770 F.3d 241, 249 (3d
Cir. 2014) (quoting <u>In re Burlington Coat Factory Sec. Litig.</u>,
114 F.3d 1410, 1426 (3d Cir. 1993)).

        When the claim is plausibly pleaded, the court must
consider affirmative defenses that defendants may raise in their
Rule 12(b)(6) motion.  Where the defense of issue preclusion is

-7-

raised, the court may take into account the prior adjudication.
M & M Stone Co. v. Pennsylvania, 388 F. App'x 156, 162 (3d Cir.
2010).

A municipality such as the City of Philadelphia may
not be held vicariously liable under 42 U.S.C. § 1983, that is
it may not be held liable under the theory of respondeat
superior, for the unconstitutional misconduct of its employees.
Monell, 436 U.S. at 691.  A municipality may only be accountable
for unconstitutional conduct under Section 1983 when the injury
results from actions taken pursuant to a governmental policy,
practice, or custom.  Id. at 694.

White does not allege that any governmental policies
resulted in his injury.  Rather, he focuses on customs of the
City, that is a course of conduct so permanent and well-settled
as to virtually constitute law.  See id. at 691.  To allege
adequately such a custom, White must aver more than a single
incident of unconstitutional misconduct because "[s]uch an
approach provides a means for circumventing Monell's limitations
altogether."  City of Okla. City v. Tuttle, 471 U.S. 808, 824
(1985).

A Section 1983 claim against a municipality may also
proceed when a plaintiff alleges that his or her injuries were
caused by the municipality's failure or inadequacy that reflects
a "deliberate or conscious choice."  Estate of Roman v. City of

<u>Newark</u>, 914 F.3d 789, 798 (3d Cir. 2019).  To state such a claim, White must aver that this failure to train was causally related to the constitutional violations he suffered and that the policymakers exhibited deliberate indifference in failing to train its employees.  See <u>Forrest v. Parry</u>, 930 F.3d 93, 106 (3d Cir. 2019).  To allege that a municipality was deliberately indifferent, White must aver that "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."  <u>Id.</u>

The City first maintains that there cannot be a <u>Monell</u> claim against it on the basis of White's coerced confession because he is judicially estopped from relitigating the issue.  The City points out that in the underlying criminal prosecution, White challenged the voluntariness of his confession.  It is undisputed that after a pre-trial hearing Judge Armand Della Porta of the Court of Common Pleas of Philadelphia County denied his motion to suppress.  If White was not personally injured by the City's custom of coercing confessions, he cannot bring a <u>Monell</u> claim against the City based on this custom.  See, e.g., <u>Tuttle</u>, 471 U.S. at 824 n.8.

A federal court is bound to apply the same preclusive effect to state court decisions as would be given by a court in the state in which the judgment was rendered.  <u>Migra v. Warren City Sch. Dist. Bd. Of Educ.</u>, 465 U.S. 75, 81 (1984).  The City, as the party asserting issue preclusion, has the burden of proving its applicability to the case.  <u>Dici v. Pennsylvania</u>, 91 F.3d 542, 548-49 (3d Cir. 1996).  In Pennsylvania, issue preclusion exists when:

> (1) the issue decided in the prior case is identical to the one presented in the later action;
> (2) there was a final adjudication on the merits;
> (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case;
> (4) the party . . . against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and
> (5) the determination in the prior proceeding was essential to the judgment.

<u>Metro. Edison Co. v. Pa. Pub. Util. Comm'n</u>, 767 F.3d 335, 351 (3d Cir. 2014) (citing <u>Off. Of Disciplinary Couns. V. Kiesewetter</u>, 889 A.2d 47, 50-51 (Pa. 2005)).

White challenges the applicability of issue preclusion only on the ground that he did not have a full and fair opportunity to litigate the issue of his coerced confession in the Court of Common Pleas.  While Judge Della Porta denied the motion to suppress the confession after a hearing, White's

counsel did not have his subpoenaed medical records for use at the hearing because the City had failed to produce them. Witnesses who were City employees testified at the hearing that the records had existed and were in the custody of the City's Bureau of Prisons but somehow could not later be located.

A party has not received a full and fair hearing on the merits where he or she has not received the minimum due process protections.  Witkowski v. Welch, 173 F.3d 192, 205 (3d Cir. 1999).  Though a federal court is bound to apply preclusive effect to state court decisions, this does not mean that the court must blindly apply decisions that are later found to have constitutional infirmities.  See Kremer v. Chem. Constr. Corp., 456 U.S. 461, 482 (1982).  "Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation."  Montana v. United States, 440 U.S. 147, 164 n.11 (1979).

The record at this early stage of the action is not clear as to whether White had a full and fair opportunity to litigate his claim that his confession was coerced.  White should at least have an opportunity to determine whether the

-11-

medical records exist.  The court will allow this Monell claim
to proceed.[2]

The City next argues that White's claim that the City
customarily permitted or encouraged homicide detectives to
withhold exculpatory evidence should be dismissed.  Although
defendants have had a constitutional right since 1963 under
Brady v. Maryland, 373 U.S. 83 (1963), to receive such evidence
from prosecutors, the City maintains that there was no such
clearly established constitutional obligation on the part of the
City or its police in 1977 when White was arrested and
prosecuted.  See Kyles v. Whitley, 514 U.S. 419 (1995); see also
Gibson v. Superintendent of N.J. Dep't of L. & Pub. Safety Div.
of State Pol., 411 F.3d 427 (3d Cir. 2005).

Unlike individual defendants, a municipality is not
entitled to the defense of qualified immunity for its policies,
practices and customs constituting constitutional violations
even if the City and its leaders acted in good faith.  The
Supreme Court has ruled:

---

2.    The City also argues this claim should be dismissed because
violations of Miranda v. Arizona, 384 U.S. 436 (1966) are
insufficient to state a claim under Section 1983.  While "a
violation of Miranda does not necessarily constitute a violation
of the Constitution," Vega v. Tekoh, 597 U.S. 134, 150 (2022),
the physical abuse White alleges goes far beyond a procedural
failure to read a suspect his or her Miranda rights.

> The knowledge that a municipality will be
> liable for all of its injurious conduct,
> <u>whether committed in good faith or not</u>,
> should create an incentive for officials who
> may harbor doubts about the lawfulness of
> their intended actions to err on the side of
> protecting citizens' constitutional rights.

<u>Owen v. City of Independence</u>, 445 U.S. 622, 651-52 (1980)

(emphasis added).  The Court determined it is "fairer to

allocate any resulting financial loss to the inevitable costs of

government borne by all the taxpayers" than on those whose

rights had been violated.  <u>Id.</u> at 655.  The Court concluded that

it could:

> discern no "tradition so well grounded in
> history and reason" that would warrant the
> conclusion that in enacting [Section] 1 of
> the Civil Rights Act, the 42d Congress <u>sub
> silentio</u> extended to municipalities a
> qualified immunity based on the good faith
> of their officers.  Absent any clearer
> indication that Congress intended so to
> limit the reach of a statute expressly
> designed to provide a "broad remedy for
> violations of federally protected civil
> rights," . . . we are unwilling to suppose
> that injuries occasioned by a municipality's
> unconstitutional conduct were not also meant
> to be fully redressable through its sweep.

<u>Id.</u> at 650 (internal citation omitted).

Our Court of Appeals, citing <u>Owen</u>, explained that

"[m]unicipalities can be held liable regardless of whether it

was clear at the time of the policy's adoption that such conduct

would violate a plaintiff's constitutional rights."  <u>Barna v.

Bd. of Sch. Dirs. of Panther Valley Sch. Dist.</u>, 877 F.3d 136,

-13-

145 n.6 (3d Cir. 2017).  White has stated a valid claim that the City had a custom of withholding exculpatory evidence from defendants under <u>Brady</u> even if the right was not clearly established as to the City until years after White's trial.[3]

The City is correct that White does not state a <u>Monell</u> claim against it insofar as he alleges a custom of the City tied to conduct of Frank DeSimone, the Assistant District Attorney or of the District Attorney's Office.[4]  The Philadelphia District Attorney's Office is a separate entity from the City and is not under its control.  <u>See</u> <u>Sourovelis v. City of Phila.</u>, 103 F. Supp. 3d 694, 710 (E.D. Pa. 2015).  The customs of the District Attorney's Office, including any failure of the organization to train or supervise its attorneys, cannot be attributed to the City.  The motion to dismiss will be granted as to the <u>Monell</u> claims regarding customs based on the conduct of DeSimone and the District Attorney's Office's failure to train or supervise its attorneys.

---

3.   The City also argues this claim should be dismissed because a deficient investigation may not be challenged under Section 1983.  However, a deficient investigation is distinct from allegations of a custom of withholding exculpatory evidence.

4.   White's claim that the City failed to train the homicide detectives of the Philadelphia Police Department will not be dismissed.  The City argues that to the extent White's claims of conspiracy and supervisory liability are premised on unsuccessful constitutional claims, such claims must fail. However, White has sufficiently pleaded such injuries and therefore, the City's motion will be denied as to that argument.

-14-

The City also argues that White's "failure to
intervene theory" fails as a matter of law because the
obligation to intervene was not clearly established at the time
of plaintiff's arrest.  For the same reasons discussed above,
the requirement that a constitutional right be clearly
established is not relevant to liability under Monell.

Finally, the City argues that all Monell claims
against it should be dismissed because White pleaded guilty to
third degree murder, robbery, and conspiracy after his earlier
convictions were vacated.[5]  It cites Gainey v. City of
Philadelphia for the proposition that his subsequent guilty plea
serves to "reduc[e] the materiality of the constitutional
violations that Plaintiff[] now allege[s]."  Civ. A. No. 22-
4143, 2023 WL 8258771, at *12 (E.D. Pa. Nov. 29, 2023), appeal
filed, No. 24-015 (3d Cir. Jan. 5, 2024).

The Supreme Court held in Heck v. Humphrey that a
plaintiff in a Section 1983 action has no claim for relief for
an unconstitutional conviction unless his conviction has been

---

5.   Under Pennsylvania law, second degree murder occurs when a
defendant causes a death when he or she "was engaged as a
principal or an accomplice in the perpetration of a felony" and
the Pennsylvania Commission on Sentencing recommends a sentence
not less than 240 months with a statutory maximum of life in
prison without parole.  Third degree murder is all "other kinds
of murder" and has a guideline sentencing range of not less than
72 months and a statutory maximum of 240 months.  See Pa. Sent'g
Guidelines §§ 303a.5(c)(2)(vii), (viii) (Pa. Comm'n on Sent'g
2024).

"reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . , or called into question by a . . . writ of habeas corpus."  512 U.S. 477, 486-87 (1994) (citation omitted).  This rule is similar to a claim of malicious prosecution, which requires proof that the prior criminal proceeding was terminated in favor of the accused and comports with the need for finality and consistency.  Id. at 484, 477.

White, it is true, pleaded guilty in 2023 to third degree murder, robbery, and conspiracy arising out of the events at Taylor's Variety Store in 1977.  Nonetheless, his 1977 convictions for which he has filed this Section 1983 action were overturned by this court by a writ of habeas corpus under 28 U.S.C. § 2254.  Heck does not preclude this lawsuit.  In Dennis v. City of Philadelphia, applying Heck to similar circumstances as in this action, the court stated:

> Under our system of justice, even the guilty are entitled to due process and a fair trial.  In other words, if a plaintiff brings a [Section] 1983 claim that does not depend on his ultimate guilt or innocence of the underlying conviction, it does not matter even if after the first criminal conviction is vacated, he is convicted a second time for the same conduct.

379 F. Supp. 3d 420, 430 (E.D. Pa. 2019), aff'd on other grounds, 19 F. 4th 279 (3d Cir. 2021).

-16-

IV

      The motion of the City of Philadelphia to dismiss Count VI of the complaint will be granted as to White's <u>Monell</u> claims related to the customs the City tied to conduct of either Frank DeSimone or the Philadelphia District Attorney's Office.  Otherwise, the motion will be denied.