IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL WHITE                    :          CIVIL ACTION
                                 :
          v.                     :
                                 :
CITY OF PHILADELPHIA, et al.     :          NO. 23-4538

MEMORANDUM

Bartle, J.                                          May 6, 2024

On December 29, 2022, the convictions and life
sentence of plaintiff Michael White for second degree murder,
robbery, and conspiracy were vacated by my colleague Judge John
R. Padova pursuant to 28 U.S.C. § 2254.  White v. Vaughn, Civ.
A. No. 94-6598, 2022 WL 17993129 (E.D. Pa. Dec. 29, 2022) (Doc.
# 94).  Judge Padova ordered the Commonwealth to release White
from custody or retry him within 180 days.  After the
Commonwealth opted to retry White, he pleaded guilty to third
degree murder, robbery, and conspiracy, was sentenced to time
served, and was released from custody after serving over forty-
six years in prison.[1]

In this action, White has sued the City of
Philadelphia, the Estate of Detective Lawrence Gerrard, the
Estate of Detective Francis Miller, and the Estate of police

---

1.   Under Pennsylvania law, the maximum sentence that may be
imposed for third degree murder is 20 years, over double times
what White in fact served.  See Pa. Sent'g Guidelines
§ 303a.5(c)(3)(vii) (Pa. Comm'n on Sent'g 2024).

Lieutenant William Shelton under 42 U.S.C. § 1983.[2]  White claims that the individual defendants participated in a civil rights conspiracy and violated his constitutional rights during the investigation and prosecution of him for murder.

Before this court is the motion of Kelly A. Rycek, Executrix of the Estate of Lawrence Gerrard, to dismiss this action as to him pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. # 22).

I

The complaint describes the initial events in this disturbing saga:

> [I]n early January 1977, White accompanied Eughinia Jones to Taylor's Variety Store at 20th and Jefferson Streets in North Philadelphia.  Jones sought to collect a debt owed to him by Georgell "Yock" Lewis, one of the owners of the store.  Jones also owed White money, and White wanted to ensure that Jones paid him after Lewis repaid Jones.  Unbeknownst to White, Jones was carrying a firearm.  While at the store, Jones shot and killed Lewis after an argument.  Carmella Sprowal, a store employee, was the only other person on the premises at the time.  Both Jones and White were arrested later that day.

---

2.    Former Assistant District Attorney Frank DeSimone was also sued.  On March 11, 2023, the court granted his motion to dismiss on the ground of absolute immunity.  White v. City of Philadelphia, Civ. A. No. 23-4538, 2024 WL 1052898 (E.D. Pa. Mar. 11, 2024) (Doc. # 18).

White v. City of Philadelphia, Civ. A. No. 23-4538, 2024 WL
1536745, at *1 (E.D. Pa. Apr. 8, 2024) (emphasis added).

Upon being arrested, White avers that he was severely
beaten by Detectives Gerrard and Miller during his
interrogation.  The complaint states that although he attempted
to comply with the officers' demands, the beating continued.
Detectives Gerrard and Miller only ceased physically assaulting
after he belatedly provided a fictitious story – that he went to
Taylor's Variety Store that day with the intention of robbing
Lewis.  Then, the Detectives, along with other unnamed
individuals forced White to sign an incriminating statement that
the detectives themselves had fabricated.  According to White,
Gerrard and Miller conspired to coerce him into signing this
fabricated inculpatory statement and that both detectives
coerced and physically assaulted him or failed to intervene to
prevent the coercion and physical assault.

After this interrogation, White was transferred to the
Philadelphia County Prison where he received necessary medical
attention.  During the course of trial, White's defense counsel
requested certain exculpatory evidence from the Assistant
District Attorney responsible for prosecuting White's case.  The
court has previously described the ensuing difficulties White
faced:

Defense counsel subpoenaed White's medical records [for his visit immediately after transfer to the Philadelphia County Prison], but it was to no avail.  While the records were apparently gathered, they later went missing and were never produced.  As a result, defense counsel was not able to make use of White's medical records in support of the motion to suppress his confession.  The motion to suppress evidence was thereafter denied.

Before trial, White's defense counsel also requested the Commonwealth produce the criminal records of Sprowal, the key prosecution witness at White's trial, and of Lewis, the homicide victim.  Defense counsel further sought information about drug activity at Taylor's Variety Store.  It was the defense's theory of events that Lewis was killed by Jones in a drug dispute that went awry.  Frank DeSimone, the Assistant District Attorney prosecuting White's case, told White's defense counsel that no such evidence existed.  It turned out, however, that Lewis had at least five arrests for the possession and sale of drugs.  Two of these arrests had occurred at the variety store.  In one of these arrests, he was found with 178 packets of heroin.  Taylor's Variety Store was well known to the Philadelphia Police Department as a front for heroin sales.  At the trial, Sprowal testified falsely that neither she nor anyone else sold drugs at the store.  Years later, Sprowal filed an affidavit that she was told by Assistant District Attorney DeSimone not to mention anything about drugs while testifying at White's trial.

Id. at *2.

White, in addition to his other claims, avers not only that Gerrard conspired to suppress exculpatory evidence but also that Gerrard failed to intervene to stop the suppression.

II

Gerrard's Estate first moves to dismiss White's complaint to the extent that White's allegations as to Gerrard do not meet the plausibility pleading standard under Twombly and Iqbal.

The complaint must plead more than "labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  It must contain more than "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555) (internal quotations and alterations omitted).  Instead, it must recite sufficient factual content to state a claim that is plausible on its face.  Id.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679.

To allege a Section 1983 claim against an individual, a plaintiff must plead a defendant's personal involvement "by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." Chavarriaga v. N.J. Dep't of Corrs., 806 F.3d 210, 222 (3d Cir. 2015) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).  A court may infer a defendant had contemporaneous, actual,

-5-

knowledge of wrongful conduct from the circumstances surrounding the case.  Id.

The complaint provides sufficient details to show plausibility as to the claim that Gerrard violated White's constitutional rights by coercing his confession.  White alleges that Gerrard was personally involved as one of two detectives who physically assaulted White during his interrogation. Further, Gerrard is identified as one of two people responsible for drafting and then coercing White to sign a fabricated confession.

In addition, White has sufficiently pleaded Gerrard's personal involvement in the suppression of exculpatory evidence. To allege a claim of deliberate deception, a plaintiff "must go beyond the failure to disclose evidence and [allege that his or her] imprisonment results from the knowing use of false testimony or other fabricated evidence or from [the concealment of] evidence to create false testimony to secure a conviction." Dennis v. City of Philadelphia, 19 F.4th 279, 291 (3d Cir. 2021).  White avers that Gerrard acquiesced to the withholding of exculpatory evidence because Gerrard knew upon hearing Sprowal's testimony that she was not telling the truth. Additionally, in coercing White's fabricated confession, Gerrard suppressed what White initially told the detectives as recounted

in White's compliant.  Thus the complaint passes muster under
the plausibility test.

White has also sufficiently pleaded that these actions
constitute an actionable civil rights conspiracy under Section
1983.  White alleges that Gerrard, a state actor, agreed with
Miller, another state actor, to fabricate White's confession and
physically assault him.  These are allegations of "the elements
of a conspiracy: agreement and concerted action."  Capogrosso v.
The Supreme Ct. of N.J., 588 F.3d 180, 184-85 (3d Cir. 2009).

Finally, the complaint alleges that Gerrard failed to
intervene to prevent a constitutional violation.  To allege such
a claim, plaintiff must plead that the officer had a reasonable
opportunity to intervene.  Smith v. Mensinger, 293 F.3d 641, 650
(3d Cir. 2002).  White has done so here.

III

Gerrard's Estate also moves to dismiss White's claims
on the ground that, even if plausibly stated, they should be
dismissed for failure to state a claim upon which relief can be
granted under Rule 12(b)(6).  At this stage, the court accepts
as true the tragic account of events recited in the complaint.
Twombly, 550 U.S. at 555.  The Court may also consider "exhibits
attached to the complaint and matters of public record."
Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998
F.2d 1192, 1196 (3d Cir. 1993).  When there is a document

-7-

"integral to or explicitly relied upon in the complaint," it may also be considered as there is no concern of lack of notice to the plaintiff.  See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1993)).

When the claim is plausibly pleaded, the court must consider affirmative defenses that a defendant may raise in his or her Rule 12(b)(6) motion.  Where the defense of issue preclusion is raised, the court may take into account the prior adjudication.  M & M Stone Co. v. Pennsylvania, 388 F. App'x 156, 162 (3d Cir. 2010).

Gerrard's Estate posits that White cannot assert Section 1983 claims on the basis of White's coerced confession because collateral estoppel bars him from relitigating the issue.  In his underlying criminal prosecution, White challenged the voluntariness of his confession.  It is undisputed that after a pre-trial hearing Judge Armand Della Porta of the Court of Common Pleas of Philadelphia County denied his motion to suppress.

A federal court is bound to apply the same preclusive effect to state court decisions as would be given by a court in the state in which the judgment was rendered.  Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984).  Gerrard's Estate, as the party asserting issue preclusion, has the burden

-8-

of proving its applicability to the case.  <u>Dici v. Pennsylvania</u>,
91 F.3d 542, 548-49 (3d Cir. 1996).  In Pennsylvania, issue
preclusion exists when:

> (1) the issue decided in the prior case is identical to the one presented in the later action;
>
> (2) there was a final adjudication on the merits;
>
> (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case;
>
> (4) the party . . . against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and
>
> (5) the determination in the prior proceeding was essential to the judgment.

<u>Metro. Edison Co. v. Pa. Pub. Util. Comm'n</u>, 767 F.3d 335, 351
(3d Cir. 2014) (citing <u>Off. Of Disciplinary Couns. v.
Kiesewetter</u>, 889 A.2d 47, 50-51 (Pa. 2005)).

White maintains he did not have a full and fair
opportunity to litigate the issue in the prior proceeding.  His
position parallels the points he raised in connection with
defendant City of Philadelphia's motion to dismiss.  In ruling
on that motion, the court stated:

> White challenges the applicability of issue preclusion only on the ground that he did not have a full and fair opportunity to litigate the issue of his coerced confession in the Court of Common Pleas.  While Judge Della Porta denied the motion to suppress the confession after a hearing, White's counsel did not have his subpoenaed medical records for use at the hearing because the City had failed to produce them.  Witnesses

who were City employees testified at the
hearing that the records had existed and
were in the custody of the City's Bureau of
Prisons but somehow could not later be
located.

A party has not received a full and fair
hearing on the merits where he or she has
not received the minimum due process
protections.  Witkowski v. Welch, 173 F.3d
192, 205 (3d Cir. 1999).  Though a federal
court is bound to apply preclusive effect to
state court decisions, this does not mean
that the court must blindly apply decisions
that are later found to have constitutional
infirmities.  See Kremer v. Chem. Constr.
Corp., 456 U.S. 461, 482 (1982).
"Redetermination of issues is warranted if
there is reason to doubt the quality,
extensiveness, or fairness of procedures
followed in prior litigation."  Montana v.
United States, 440 U.S. 147, 164 n.11
(1979).

The record at this early stage of the action
is not clear as to whether White had a full
and fair opportunity to litigate his claim
that his confession was coerced.  White
should at least have an opportunity to
determine whether the medical records exist.

White, 2024 WL 1536745, at *4.  The motion of Gerrard's Estate

to dismiss White's Section 1983 claim related to the coerced

confession on the basis of collateral estoppel will be denied.

IV

Next, Gerrard's Estate argues that White should be

judicially estopped from pursuing relief under Section 1983 for

White's coerced confession because of his recent guilty plea for

third degree murder, robbery, and conspiracy.  It maintains a

guilty plea is inconsistent with White's contention that his confession was coerced.

Judicial estoppel may be applied to "prevent a litigant from asserting a position inconsistent with one that [he or] she has previously asserted in the same or in a previous proceeding." Ryan Operations G.P. v. Santiam-Midw. Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996).

White counters that this argument is a "wolf in sheep's clothing." His original conviction was for second degree murder. A person commits this crime when he or she causes a death when "engag[ing] as a principal or an accomplice in the perpetration of a felony." 18 Pa. Cons. Stat. § 2502(b). For such an offense, the Pennsylvania Commission on Sentencing recommends a sentence not less than 240 months with a statutory maximum of life in prison without parole. See Pa. Sent'g Guidelines § 303a.5(c)(3)(viii). His subsequent plea was to third degree murder, which is defined as all "other kinds of murder," that is all kinds of murder other than murder in the first and second degrees. 18 Pa. Cons. Stat. § 2502(c). It has a guideline sentencing range of not less than 72 months and a statutory maximum of 240 months. Id. at § 303a.5(c)(3)(vii).

White's plea to third degree murder is not a bar to seeking relief for the due process violations in the prior proceeding. He relies on Heck v. Humphrey, which permits a

-11-

plaintiff to bring a Section 1983 claim for relief for an unconstitutional conviction when his conviction has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . , or called into question by a . . . writ of habeas corpus."  512 U.S. 477, 486-87 (1994).

Courts in this circuit have determined that judicial estoppel is inapplicable where a person has pleaded guilty to a different crime or entered a nolo contendere plea to the same crime.  In Dennis v. City of Philadelphia, this court applied Heck to the case of James Dennis, who brought claims under Section 1983 related to his first degree murder conviction after he was granted habeas relief.  379 F. Supp. 3d 420, 423 (E.D. Pa. 2019), aff'd in part, 19 F. 4th 279 (3d Cir. 2021).  After the Commonwealth offered Dennis a plea deal which would allow him to finish his sentence immediately, he entered a no contest plea to third degree murder.  Id. at 426.  The court found that Dennis's subsequent plea did not bar his Section 1983 claims alleging fabrication of evidence and deliberate deception in his original proceeding.  The court reasoned that such violations occurred with respect to his original conviction and not in his subsequent conviction.  Id. at 430.

White, as noted above, has now pleaded guilty to third degree murder, robbery, and conspiracy arising out of the events

-12-

at Taylor's Variety Store in 1977.  However, the 1977

convictions for which he filed this Section 1983 action were

overturned by this court by a writ of habeas corpus under 28

U.S.C. § 2254.  As stated in Dennis,

> [E]ven the guilty are entitled to due
> process and a fair trial.  In other words,
> if a plaintiff brings a [Section] 1983 claim
> that does not depend on his ultimate guilt
> or innocence of the underlying conviction,
> it does not matter even if after the first
> criminal conviction is vacated, he is
> convicted a second time for the same
> conduct.

Dennis, 379 F. Supp. 3d at 430.

The motion of Gerrard's Estate to dismiss White's

claim related to White's coerced confession will be denied.

V

Gerrard's Estate further argues that White's claim

that Gerrard withheld exculpatory evidence by coercing White's

fabricated confession should be dismissed on the basis of

qualified immunity.

The doctrine of qualified immunity shields government

officials from monetary damages under Section 1983 unless their

conduct violates clearly established constitutional or statutory

rights of which a reasonable person would have known.  Kelly v.

Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010) (citing

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  A court may

consider, in either order, whether the facts alleged show the

-13-

violation of a constitutional or statutory right or whether the law was clearly established at the time of the violation. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Although criminal defendants have had a constitutional right since 1963 to receive exculpatory evidence from prosecutors under Brady v. Maryland, 373 U.S. 83 (1963), Gerrard's Estate maintains that there was no such clearly established constitutional obligation on the part of police officers to turn over such evidence in 1977.  See Kyles v. Whitley, 514 U.S. 419 (1995); see also Gibson v. Superintendent of N.J. Dep't of L. & Pub. Safety Div. of State Pol., 411 F.3d 427 (3d Cir. 2005).

White concedes that he cannot state a valid Brady violation against Gerrard because it was not clearly established at the time of his arrest.  Instead, he characterizes his claim as one of deliberate deception.  In 1935, the Supreme Court held that a person has a clearly established constitutional right not to be convicted on the basis of testimony known to be false. See Mooney v. Holohan, 294 U.S. 103, 112 (1935).  In 1942, in Pyle v. Kansas, the Supreme Court recognized that it was also a violation of due process when such a conviction occurs due to the deliberate suppression of favorable testimony.  317 U.S. 213, 216 (1942).

White sufficiently alleges that Gerrard engaged in deliberate deception by coercing and fabricating White's confession.  By forcing White to sign a fabricated confession, Gerrard thereby suppressed what White initially told the detectives before he was coerced into providing a false story. White's initial exculpatory statements, which contradicted his later, fabricated statement, were suppressed.  The right not to be convicted on the basis of falsified evidence was clearly established when he was arrested in 1977.  Thus qualified immunity will not shield Gerrard's Estate as to White's claim of deliberate deception.  See, e.g., Dennis, 19 F.4th at 289-90.

VI

Gerrard's Estate asserts that at the time of White's arrest and prosecution there was no clearly established constitutional right of a defendant to have a police officer intervene on his or her behalf when the officer witnesses the coercion of a confession.  Rather, it contends that liability for failure to intervene outside of the Eighth Amendment excessive force context has not been clearly established.  See, e.g., Onyiah v. City of Philadelphia, 660 F. Supp. 3d 407, 415-16 (E.D. Pa. 2023); Ogrod v. City of Philadelphia, 598 F. Supp. 3d 253, at 272-73 (E.D. Pa. 2022).  Claims of excessive force under the Eighth Amendment may be brought by convicted persons. Since White had not been convicted at the time of the events in

-15-

question, his claims of assault and coercion of his confession are properly brought as a due process violation under the Fourteenth Amendment.  See Kingsley v. Hendrickson, 576 U.S. 389, 400-01 (2015).

White cites Smith v. Mensinger for the proposition that it is clearly established that an officer has an obligation to intervene when another officer uses excessive force.  293 F.3d at 651.  Gerrard's Estate counters that not only is Smith limited to the Eighth Amendment context but also that it was decided in 2002, well after White's interrogation.

A plaintiff may show that a right has been clearly established by identifying either cases of controlling authority at the time of the incident or a "robust 'consensus of cases of persuasive authority.'"  Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011) (quoting Wilson v. Layne, 526 U.S. 603, 617 (1999)). Under the latter approach, the court may consider factually similar caselaw from our sister circuits.  See, e.g., El v. City of Pittsburgh, 975 F.3d 327, 341 (3d Cir. 2020).

Smith, as noted, was decided in 2002.  It concerns events which occurred in 1995 and therefore, was not controlling authority at the time of the incident here.  Nonetheless, there was a robust consensus from multiple circuits going back to a time before White's arrest that a constitutional violation occurs when officers who witness the use of excessive force fail

-16-

to intervene and stop their fellow officers who use such force against people who are not convicted prisoners.  See, e.g., Byrd v. Brishke, 466 F.2d 6, 11 (7th Cir. 1972); Smith v. Ross, 482 F.2d 33, 36 (6th Cir. 1973) (per curiam).

In 1976, our court decided in Pitrone v. Mercadante that plaintiff had adequately pleaded a basis for Section 1983 liability as to individual officers by averring that the individual officers had either failed to intervene to protect plaintiff from the officer that assaulted him or encouraged the officer in doing so during his arrest.  See 420 F. Supp. 1384, 1387 n.5 (E.D. Pa. 1976) (citing Byrd, 466 F.2d at 11), vacated on other grounds, 572 F.2d 98 (3d Cir. 1978); see also Davidson v. Dixon, 386 F. Supp. 482, 489 (D. Del. 1974), aff'd, 529 F.2d 511 (3d Cir. Dec. 1, 1975) (unpublished table decision).

Our Court of Appeals in Garbacik v. Janson, 111 F. App'x 91, 94 (3d Cir. 2004) relied on Byrd, which was decided in 1972.  In Garbacik, the plaintiff alleged that two police officers had used excessive force against him during his arrest. One of two state troopers had used excessive force in subduing him, but he could not recall which officer it was.  Id. at 92. The court reasoned that, because "[s]everal circuit courts had concluded prior to [the assault of Garbacik in 1995] that the direct use of excessive force is not required to impose liability under [Section] 1983[,]" it was clearly established

-17-

that the officers could be liable under Section 1983 for failing
to intervene when excessive force is used by another officer.
Id. at 94.

At the time of White's arrest and interrogation, it
was clearly established that a police officer may be liable
under Section 1983 "when he 'fails or refuses to intervene when
a constitutional violation such as an unprovoked beating takes
place in his presence." Thorpe v. City of Philadelphia, Civ. A.
No. 19-5094, 2020 WL 5217396, at *10 (E.D. Pa. Sept. 1, 2020)
(citing Smith, 293 F.3d at 650). For that reason, qualified
immunity will not be granted to Gerrard's Estate as to White's
claim that Gerrard failed to intervene to stop White's coerced
confession.

Finally, Gerrard's Estate argues there is no clearly
established right for a police officer to intervene where
exculpatory evidence is withheld. In White's opposition, he
concedes that an actionable claim for an officer's failure to
intervene "has not been extended to non-violent acts." There is
no clearly established duty of an officer to intervene to
prevent another state actor from engaging in deliberate
deception. Onyiah, 660 F. Supp. 3d at 416 (citing Thorpe, 2020
WL 5217396, at *10). Thus, on the basis of qualified immunity,
the motion of Gerrard's Estate will be granted as to White's

claim that Gerrard failed to intervene as to the suppression of exculpatory evidence.