IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL WHITE                    :          CIVIL ACTION
                                 :
          v.                     :
                                 :
CITY OF PHILADELPHIA, et al.     :          NO. 23-4538

MEMORANDUM

Bartle, J.                                   December 22, 2025

          Plaintiff Michael White has sued the City of

Philadelphia and the Estate of Lawrence Gerrard, a now deceased

Philadelphia detective, under 42 U.S.C. § 1983 for alleged

constitutional violations related to his criminal prosecution

and conviction that occurred over four decades ago.  The essence

of these alleged violations are the obtaining a coerced

confession from White, the fabricating of testimony at his

trial, and the withholding of material required to be produced

under Brady v. Maryland, 373 U.S. 83 (1963).[1]  The claim against

the City rests on Monell v. Dept. of Social Services of City of

New York, 436 U.S. 658 (1978).

---

[1]    Five of the six counts in the complaint under 42 U.S.C.
§ 1983 remain.  Those against the Estate of Gerrard are labeled:
(1) Count I – "Deprivation of Liberty without due process of
laws and Denial of a Fair Trial under the Fourteenth Amendment";
(2) Count II – "Violation of Plaintiff's rights against self-
incrimination in violation of the Fifth and Fourteenth
Amendments"; (3) Count III – "Civil Rights Conspiracy"; and (4)
Count IV – "Failure to Intervene."  Count VI against the City is
labeled "Municipal Liability."  Count V contained a claim
against defendant, Estate of Lt. William Shelton.  This claim
was previously dismissed.

Before the court are the motions of the defendants for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

I

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). The court views the facts and draw all inferences in favor of the nonmoving party. See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

Summary judgment is granted where there is insufficient record evidence for a reasonable factfinder to find for the nonmovant. See Anderson, 477 U.S. at 252. "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." Id. In addition, Rule 56(e)(2) provides "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . .

consider the fact undisputed for the purposes of the motion." Fed.
R. Civ. P. 56(e)(2).

II

It is undisputed that Georgell Lewis was shot and
killed during a robbery on January 19, 1977 at a variety store
in North Philadelphia he either owned or managed and that White
and Eughenia Jones were arrested that day for the crimes.

The next day, January 20, 1977, White purportedly
signed a written confession after being interrogated by
Detective Gerrard.  In that confession, White admitted that he
was present at the variety store and told Lewis to lie down so
that he could be searched for money.  At that point, Lewis was
shot when a gun went off "by accident."  The confession does not
say who was the shooter.  Jones took a ring and watch belonging
to Lewis.  After giving his confession, White was transferred to
a Philadelphia County prison where he received medical
treatment.

Thereafter, White moved to suppress his confession on
the ground that it was coerced by the detectives including
Gerrard who beat and threatened him.  His counsel subpoenaed his
medical records in support of the motion, but the medical
records were missing and never found.  In June 1977, after five
days of hearings and eight witnesses (but not White), Judge
Armond Della Porta of the Court of Common Pleas of Philadelphia

County denied the motion to suppress.  The Judge stated on the
record:

> ... the statement given was given as a
> result of an understanding of his rights and
> appreciation of the consequences of a waiver
> and that he knowingly and without force,
> threats or pressure voluntarily did waive
> his constitutional rights and gave a
> statement to the police.  Therefore, the
> statement is admissible.

Judge Della Porta also found that the Commonwealth's
handling of inmates' medical records was negligent but that
there was no evidence that anyone acted willfully or
intentionally to keep White's medical records from being
produced.

White's jury trial, presided over by Judge Della
Porta, began on June 23, 1977.  At that point, defense counsel
asked the prosecution for information about whether Lewis had
any drugs on his person or in the store.  The prosecutor replied
that he had checked Lewis' record and that as far as he knew,
Lewis had never been convicted of a crime.  Defense counsel had
hoped to use any information about Lewis' involvement in the
drug trade to argue that the shooting was over a drug deal
between Lewis and Jones.  There was also testimony from Carmella
Sproul, a young woman who was working in the store at the time
of the crimes but did not witness the shooting.  She stated on
the stand that there was no illegal drug activity on the

premises.  A number of years later she recanted this part of her
testimony.

White was convicted of second-degree murder, robbery,
and conspiracy and was sentenced to life imprisonment.  The
Pennsylvania Supreme Court affirmed.  Commonwealth v. White, 415
A.2d 399, 402 (Pa. 1980).  The focus of its decision was on an
issue not relevant here.  In footnote 1, the Court stated that
all other issues raised by White were "without merit and not
requiring in-depth analysis," including the issue White raised
that "the suppression court erred in finding [his] waiver of
constitutional rights valid."  Id. at 400 n.1.

In 1993, over twelve years after the decision of the
Pennsylvania Supreme Court, Judge Della Porta held a hearing on
White's petition under Pennsylvania's Post Conviction Relief
Act.  Commonwealth ex rel. Michael White v. Vaughn, Jan. Term
1977, Nos. 2333-37, slip op. at 2 (Phila. Cty. Ct. Common Pleas
Mar. 19, 1993).  The Court ruled that the Commonwealth had
committed a Brady violation by not revealing to defense counsel
at White's 1977 trial that Lewis had an arrest record.  Id. at
10.  It found that the prosecutor at the time had been aware of
this information.  White, the Court determined, had been denied
due process and a fair trial.  It vacated the judgment of
sentence and barred further prosecution.  Id. at 10-11.  The
Superior Court, however, reversed.  Commonwealth v. White, No.

-5-

903 Philadelphia 1993, slip op. at 5-6 (Pa. Super. Ct. June 29, 1993).

Having exhausted his state remedies, White filed a petition for habeas corpus relief in this court under 28 U.S.C. § 2254. The Commonwealth did not oppose the petition. On December 29, 2022, my colleague Judge John R. Padova vacated White's conviction and sentence based on Judge Della Porta's analysis, his own analysis, and the Commonwealth's concession that there had been a <u>Brady</u> violation in not producing Lewis' arrest record. <u>White v. Vaughn</u>, No. 94-6598, 2022 WL 17993129, at *5-6 (E.D. Pa. Dec. 29, 2022). The Court ordered the Commonwealth to retry or release White within 180 days. <u>Id.</u> After the Commonwealth opted to retry him, he pleaded guilty to third degree murder, robbery, and conspiracy, and was sentenced to time served. He was released from custody after serving over forty-six years in prison.

III

The defendants argue that White's § 1983 action is barred under the Supreme Court's decision in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994). The Court held that in order to recover damages for an unconstitutional or unlawful conviction or imprisonment that would render a conviction or sentence invalid, a "§ 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order,

-6-

declared invalid by a state tribunal authorized to make such determination or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Id. at 486-87.  The Court ruled that a tort action, including one under § 1983, is not the proper vehicle to call into question outstanding criminal judgments.  Id. at 485.

In undertaking a Heck analysis, a court asks itself two questions.  First, would a favorable judgment in a § 1983 action undermine the validity of plaintiff's first and/or second criminal conviction.  Second, if the answer is "yes" as to either, has that criminal conviction been invalidated?  Dennis v. City of Philadelphia, 379 F. Supp. 3d 420, 428 (E.D. Pa. 2019).

White's § 1983 action asserts unconstitutional acts by the City and Detective Gerrard that occurred in 1977.  He claims he received an unfair trial in 1997 due to a coerced confession, fabricated evidence, and the withholding of Brady material.  He does not argue and the success in this action does not depend on his innocence, for even the guilty have constitutional rights and are entitled to a fair trial.[2]  Id. at 430; Poventud v. City

---

[2]    White has always maintained that he himself did not kill Lewis, and his confession does not say that he did.  At his guilty plea hearing in 2023, he did not admit he was the shooter.  Even if he was not the shooter, he can still be convicted of second or third-degree murder.  Commonwealth v.

of New York, 750 F.3d 121, 137-38 (2d Cir. 2014); see also Thompson v. Clark, 596 U.S. 36, 48-49 (2022). Success in this § 1983 action would clearly undermine the validity of his 1977 criminal conviction since success would necessarily mean that the conviction was tainted with constitutional violations and cannot stand. That conviction, however, was called into question by a federal court's issuance of a writ of habeas corpus under § 2254. It was terminated in White's favor when it was vacated by this court in 2022. Heck, 512 U.S. at 485. At that point, the first conviction no longer existed. Id.

The court must also ask the same questions as to his second conviction. White pleaded guilty, knowingly and voluntarily, in 2023 to third-degree murder, robbery, and conspiracy before a Common Pleas judge. He did so by admitting to certain material facts recited by an Assistant District Attorney in open court. There was no mention of his confession or the testimony of Carmella Sproul, and his guilty plea was not predicated on either. His pending § 1983 action simply involves the 1977 alleged constitutional violations and has nothing to do with his 2023 conviction which was free of constitutional challenges. Success in this lawsuit would not in any way undermine or call into question his second conviction. The fact

---

Wilson, 426 A.2d 575, 576 (Pa. 1981); see Commonwealth v. Rivera, 238 A.3d 482, 499-501 (Pa. Super. Ct. 2020).

that the second conviction remains in effect presents no
obstacle under Heck.

Defendants cite two decisions of our Court of Appeals
which they read as barring White's action under Heck.  Both are
inapposite.  In Gilles v. Davis, 427 F.3d 197 (3d Cir. 2005),
the plaintiff sued local police officials under § 1983 for
violation of his First Amendment rights in connection with his
arrest on a college campus for resisting arrest, disorderly
conduct and failure of disorderly persons to disperse.
Plaintiff resolved the charges by entering into Pennsylvania's
Accelerated Rehabilitation Disposition Program.  Id. at 203.
The Court of Appeals explained that the program imposes a number
of restrictions and that participation in the program is not a
favorable termination of criminal charges.  Id. at 208-12.  As a
result, plaintiff's § 1983 action failed under Heck.  Id. at
210.  In contrast, the termination of White's first conviction
ended favorably to him.

The second decision on which the defendants rely is
Bronowicz v. Allegheny County, 804 F.3d 338 (3d Cir. 2015).
There the plaintiff brought a § 1983 action in which he alleged
constitutional violations involving numerous sentencings as well
as proceedings involving revocation of probation.  Id. at 340.
The Superior Court of Pennsylvania vacated his sentence in one
case.  Id. at 343.  The Commonwealth conceded, among other

-9-

problems, that Bronowicz's probation had been revoked and he had
been sentenced to prison in absentia with no indication that he
had waived his presence.  Id.  Defendants cite language in this
Court of Appeals decision that the invalidation of a sentence
must indicate the innocence of the accused to constitute a
favorable outcome and to avoid the Heck bar.  Id. at 346.  This
is dictum.  Indeed, in that action, there was no indication by
the Superior Court or the Court of Appeals that Bronowicz was
innocent of any violation of his probation.  Yet the court
allowed his § 1983 action to proceed.  The court explained that
it "eschewed an overly mechanical approach."  Instead,

> we consider whether the totality of the
> circumstances surrounding the prior
> proceedings reflect a favorable outcome for
> the plaintiff that would be consistent with
> the success of the plaintiff's § 1983
> claims.

Id.  In addition, any actual innocence requirement for a § 1983
action to succeed, at least insofar as a claim for malicious
prosecution is concerned, has been abrogated by the Supreme
Court in Thompson v. Clark, 596 U.S. 36, 48-49 (2022).  It is
also significant that Heck never said a word about innocence as
a factor in deciding whether to allow a § 1983 action to
proceed.  See generally Heck v. Humphrey, 512 U.S. 477 (1994).

    In sum, a court must determine under Heck whether a
favorable outcome in a § 1983 action would undermine a criminal

judgment.  If the criminal judgment has been invalidated, a plaintiff's § 1983 action may proceed.  Likewise, the action may proceed if an outstanding criminal judgment exists but would not be undermined.  In both circumstances, there is no clash between a § 1983 action and a criminal judgment.

This action, if successful, would undermine White's first conviction, but that conviction has been invalidated. This action, if successful, would not undermine his second conviction which remains in force.  Accordingly, it is not barred by Heck.

IV

The defendants further argue that even if this action is not prohibited by Heck, White is collaterally estopped from challenging the constitutionality of his confession.  They rely on Judge Della Porta's 1977 ruling upholding the confession and the decision of the Pennsylvania Supreme Court affirming that ruling.  Commonwealth v. White, 415 A.2d 399, 400 n.1 (1980).

A federal court, pursuant to the Full Faith and Credit Clause of the Constitution, U.S. Const. art. IV, § 1, and to 28 U.S.C. § 1738, is bound to apply the same preclusive effect to a state court decision as the state court itself would apply. Migra v. Warren City School District, 465 U.S. 75, 81-83 (1984). Thus, this court must look to the law of Pennsylvania.

The Supreme Court of Pennsylvania in <u>Rue v. K-Mart</u>
<u>Corporation</u>, 713 A.2d 82, 84 (Pa. 1998), set forth the following
requirements for collateral estoppel or issue preclusion:

> (1) An issue decided in a prior action is
> identical to one presented in a later
> action;
> (2) The prior action resulted in a final
> judgment on the merits;
> (3) The party against whom collateral
> estoppel is asserted was a party to the
> prior action, or is in privity with a party
> to the prior action; and
> (4) The party against whom collateral
> estoppel is asserted had a full and fair
> opportunity to litigate the issue in the
> prior action.

There is no dispute that factors (1) and (3) have been
satisfied. The critical questions are whether there has been a
final judgment on the merits in the state court on the issue of
coerced confession and whether White had a full and fair
opportunity to litigate the issue.

In April 1977, before White's trial, Judge Della Porta
of the Court of Common Pleas held a lengthy evidentiary hearing
over five days on White's motion to suppress his confession.
The Court heard from eight witnesses. On April 18, at the
conclusion of the hearing, the court ruled, as noted earlier:

> the statement given was given as a result of
> an understanding of his rights and
> appreciation of the consequences of a
> waiver, and that he willingly,
> understandingly, knowingly and without any
> force or threats or pressure voluntarily did
> waive his constitutional rights and give a

>               statement to the police.  Therefore, the
>               statement is admissible in evidence.

The Pennsylvania Supreme Court thereafter affirmed Judge Della

Porta's ruling.  Commonwealth v. White, 415 A.2d 399, 402

(1980).  It concluded that any argument about the invalidity of

the confession was "without merit" and "not requiring in-depth

analysis." Commonwealth v. White, 415 A.2d 399, 400 n.1 (1980).

In addition, White has not pointed to anything in the record

that the Commonwealth improperly withheld from him any evidence

relevant to his motion to suppress.  The hearing on the motion

was held two months before the trial began in late June 1977.

Nor has White otherwise cited to any relevant new evidence that

was unavailable at the time of his suppression motion.[3]  White

has had a full and fair opportunity to litigate the issue of his

confession in the Pennsylvania courts.

        The court turns to question whether there is a final

judgement on the merits of White's confession.  For purposes of

issue preclusion, a final judgment "includes any prior

adjudication of another action that is determined to be

sufficiently firm to be accorded conclusive effect."

Restatement (Second) of Judgments § 13 (1982); In re Brown, 951

F.2d 564, 569-70 (3d Cir. 1991).

---

[3]    The medical records of White, missing since 1977, were not
located during discovery in this action.

After the affirmance of White's conviction by the Pennsylvania Supreme Court, Judge Padova, in the § 2254 proceeding, ordered White to be retried or released in 180 days. White v. Vaughn, No. 94-6598, 2022 WL 17993129, at *5 (E.D. Pa. Dec. 29, 2022).  Our Court of Appeals in Henderson v. Frank, 155 F.3d 159, 167-68 (3d Cir. 1998), explained that a district court in a § 2254 proceeding is not reviewing or revising a state court decision generally as if the district court were deciding the matter on direct appeal.  Id.  Rather, the district court is simply focusing on personal liberty and determining whether there was improper detention.  Id.  If there was improper detention, the district court may order immediate release conditional upon the state court's correcting the constitutional errors found by the district court to have occurred in the state proceedings.  In the § 2254 proceeding here, Judge Padova granted relief solely on the basis of a Brady violation.  White v. Vaughn, No. 94-6598, 2022 WL 17993129, at *5 (E.D. Pa. Dec. 29, 2022).  He did not disturb the ruling of the Pennsylvania Supreme Court affirming the validity of White's confession.

White's first judgment of conviction, it is true, has been overturned for purposes of Heck.  Nonetheless, it was overturned in the limited sense of requiring a new trial or release because of a Brady violation.  The focus was on White's illegal detention.  Judge Padova's decision did not undermine or

-14-

affect the validity of White's confession.  If White had been
retried in 2023, there was no existing state or federal court
ruling to prevent the introduction into evidence of his 1977
confession.  Only the <u>Brady</u> violation would have had to have
been rectified.  The decision of the Pennsylvania Supreme Court
upholding White's confession on the merits after a full and fair
hearing before Judge Della Porta is sufficiently firm to be
accorded conclusive effect.  <u>See</u> <u>In re Brown</u>, 951 F.2d at 569-
70.

Accordingly, White is barred in this § 1983 action by
collateral estoppel or issue preclusion from relitigating the
constitutionality or legality of his confession.

V

Finally, defendants move for summary judgment to the
extent that White's claims are predicated on fabricated
testimony of Carmella Sproul at the 1977 trial and on the
failure to provide him with the impeachment material of Lewis'
arrest record in violation of <u>Brady</u>.

It must be emphasized that all decisions made with
respect to what information would be or would not be produced to
a defendant before trial and what evidence is sought to be
admitted at trial are decisions made by the assistant district
attorney.  Under Pennsylvania law, the Office of the
Philadelphia District Attorney is a separate entity from and not

-15-

under the control of the City of Philadelphia.  Sourovelis v. City of Philadelphia, 103 F. Supp. 3d 694, 710 (E.D. Pa. 2015). Detective Gerrard was an employee of the City and not of the District Attorney's Office.  There is nothing in the record to support any knowledge or involvement of the City or Gerrard with respect to any fabricated testimony of Sproul or the Brady violation.  Consequently, the City and the Gerrard's Estate cannot be deemed to have caused or to be responsible for any harm to White as a result of these constitutional infractions. The fault, if any, rests with the prosecutor and the District Attorney's Office.

VI

For the above reasons, the court will grant the motions of the defendants the City of Philadelphia and the Estate of Lawrence Gerrard for summary judgment.